**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| KELLOGG BROWN & ROOT SERVICES, INC., <br><br>           Plaintiff, <br><br> vs. <br><br> THE UNITED STATES OF AMERICA, <br><br>           Defendant. | Case No. 1:12-cv-00780-LJB <br> Judge Bush <br><br> ORAL ARGUMENT REQUESTED |

<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

The Court has subject-matter jurisdiction in this case because Plaintiff Kellogg Brown & Root Services, Inc. ("KBRSI") timely appealed the U.S. Army Corps of Engineers ("USACE") contracting officer's November 2011 final decision denying KBRSI's December 2010 claim for the government to comply with its contractual indemnification obligations ("the December 2010 nonmonetary claim").  The two jurisdictional requirements under the Contract Disputes Act ("CDA") are a valid claim and a final decision by the contracting officer.  *James M. Ellett Constr. Co., Inc. v. United States*, 93 F.3d 1537, 1541-42 (Fed Cir. 1996).  As set forth below, both requirements are met here.  KBRSI has demonstrated by a preponderance of the evidence that this Court has jurisdiction over the instant appeal from the denial of the December 2010 nonmonetary claim.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

The government's motion to dismiss should be denied.  Its argument for dismissal is not only misfocused but also oblivious to subsequent statements made by USACE.  First, the government mistakenly argues that KBRSI failed to submit a certified claim for a sum certain before filing suit in this Court.  However, KBRSI's December 2010 nonmonetary claim did not seek "the payment of money" but rather sought the "interpretation of contract terms, or other

relief arising under or relating to the contract," as KBRSI was entitled to do under the CDA's disputes clause that had been incorporated into its contract. As the government acknowledges elsewhere in its motion, a claim for such nonmonetary relief requires neither the inclusion of a sum certain nor certification.

Second, in its November 2011 denial of KBRSI's December 2010 nonmonetary claim, USACE expressly invited KBRSI to file a separate claim for the payment of money to recover the legal costs it has incurred in connection with third-party litigation. KBRSI filed such a certified claim in December 2012 ("the December 2012 certified monetary claim"). USACE declined to decide the December 2012 certified monetary claim, characterizing it to be "substantially the same" as the allegations made in the pending lawsuit. The government cannot now argue that the instant suit should be dismissed for "lack" of a certified claim for a sum certain, when the government only weeks ago considered KBRSI's certified claim for a sum certain and declined to decide it because of the pending lawsuit. Such a "gotcha" argument by the government is at best logically inconsistent and at worst akin to an unwinnable shell game that should be rejected by the Court.

I. BACKGROUND

Pursuant to its March 2003 "Restore Iraqi Oil" ("RIO") contract with USACE, KBRSI began performing restoration work at the Qarmat Ali Water Treatment Plant and elsewhere in Iraq in support of U.S. military and foreign policy goals during Operation Iraqi Freedom. Because of the likelihood that KBRSI would face unusually hazardous risks during contract performance, the United States approved the insertion into the RIO contract of an indemnification provision in accordance with Public Law 85-804 and FAR 52.250-1. The United States defined unusually hazardous risks to include "sudden or nonsudden release of . . . toxic or hazardous substances or contaminants into the environment . . . ." Ex. A

(December 29, 2010 Letter) at 4. The RIO contract also required the United States to ensure that work sites were "benign" and free of hazards, including environmental hazards, prior to directing KBRSI to begin work.

Because of the ongoing hostilities and physical threats, the United States Army assigned National Guard personnel as force protection to KBRSI personnel at Qarmat Ali and elsewhere throughout Iraq. National Guard personnel later filed various lawsuits against KBRSI alleging harmful exposure from sodium dichromate, a toxic anti-corrosive previously used by the Iraqis at Qarmat Ali. British military personnel who had been assigned to provide perimeter security at Qarmat Ali also joined the litigation against KBRSI. KBRSI promptly notified USACE of these lawsuits and ultimately submitted its December 2010 nonmonetary claim, in which KBRSI requested that the United States comply with its indemnification obligations, specifically by participating directly in and/or assuming direct responsibility for the defense of the lawsuits.

After various discussions and correspondence with KBRSI, in November 2011 the USACE contracting officer issued a final decision denying KBRSI's December 2010 nonmonetary claim and interpreting the indemnification provision as not requiring the United States to participate in, or assume responsibility for, the lawsuits. *See* Ex. B. KBRSI timely appealed the denial to this Court by filing the instant case on November 16, 2012.

In his denial of the December 2010 nonmonetary claim, the USACE contracting officer also stated that KBRSI would need to file a claim under the CDA if it wished to recover "its litigation costs and any resulting judgment or settlement." Ex. B at 2. To that end, KBRSI submitted its December 2012 certified monetary claim for outside legal costs in the amount of $23,146,997.59 based on various theories of recovery, including but not limited to indemnification under P.L. 85-804. The contracting officer declined to issue a decision on the

3

December 2012 certified monetary claim because "the claim is substantially the same as the lawsuit filed by [KBRSI] in [this Court] on November 16, 2012 (Case No. 12-780)." Ex. C (February 11, 2013 Letter). KBRSI appealed the declination of the December 2012 certified monetary claim in a separate but related case that is also pending before this Court. *Kellogg Brown & Root Services, Inc. v. United States*, Case No. 1:13-cv-00169-LJB. *See* Ex. D (Notice of Related Case).

II.   THIS COURT HAS JURISDICTION UNDER THE CONTRACT DISPUTES ACT

This Court has jurisdiction over an appeal filed within twelve months of a contracting officer's decision regarding a claim. *See* 41 U.S.C. § 7104(b) (providing that contractors must appeal a final decision within twelve months); 28 U.S.C. § 1491(a)(1) (providing that this Court has jurisdiction over claims against the United States founded upon an express contract); 28 U.S.C. § 1491(a)(2) (conferring jurisdiction over "nonmonetary disputes on which a decision of the contracting officer has been issued").

To avoid judicial resolution of its indemnification obligations, the government improperly interpreted KBRSI's December 2010 nonmonetary claim as one for monetary relief that was not certified and for which no sum certain was provided. Contrary to the government's allegations, KBRSI's December 2010 nonmonetary claim was for contract interpretation and other *nonmonetary* relief, relief that the contracting officer denied in a final decision.

    A.   <u>KBRSI Submitted a Valid Claim for Nonmonetary Relief</u>

The RIO contract incorporated the CDA's standard disputes clause, which provides as follows:

> Claim, as used in this clause, means a *written demand* or written assertion by one of the contracting parties *seeking, as a matter of right*, the payment of money in a sum certain, the adjustment or *interpretation of contract terms, or other relief arising under or relating to this contract*.

4

Ex. E at 70, RIO Contract (incorporating FAR 52.233-1) (emphasis added).  *See also* FAR 2.101 (defining a "claim").  It is clear that claims under the CDA are not limited to requests for payment of a sum certain; nonmonetary relief—contract interpretation or other relief—may also form the basis of a claim.  Further, it is well established that this Court has jurisdiction over such claims for nonmonetary relief.  The Federal Circuit has held that the Tucker Act granted this Court "jurisdiction to grant nonmonetary relief in connection with contractor claims, including claims requesting an interpretation of contract terms."  *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1270 (Fed. Cir. 1999).  Further, a contractor does not need to certify claims for nonmonetary relief.  *Id.* at 1267; *Summit Contractors*, AGBCA No. 81-136-1, 81-1 BCA 14,872 (Jan. 12, 1981); *Sims Paving Corp.*, DOTCAB No. 1822, 87-2 BCA 19,928 (June 22, 1987).

KBRSI's December 2010 nonmonetary claim for contract interpretation and related request for the government to comply with its indemnification obligations is not a claim for quantum and, as such, does not require certification.  Specifically, KBRSI's December 2010 nonmonetary claim requested that, pursuant to its obligations under P.L. 85-804 and FAR 52.250-1, "USACE *participate* directly in these lawsuits and/or *assume direct responsibility* for their defense."  Ex. A at 4 (emphasis added); *see also* Ex. F (June 9, 2011 Letter) at 5 (discussing the Army's legal obligation to "take a more active role in the litigation.").  Although KBRSI's 2010 nonmonetary claim references its ongoing litigation costs, inclusion of that information does not convert KBRSI's December 2010 nonmonetary claim into one for a sum certain.  *See Alliant,* 178 F.3d at 1270 (noting that the Court retains jurisdiction over nonmonetary claims even if the contractor could convert its nonmonetary claim into a monetary claim at a later date).

The nonmonetary nature of KBRSI's December 2010 claim was echoed by the USACE contracting officer in his November 2011 final decision in which he "decline[d] [KBRSI's]

5

request that the USACE acknowledge that any recovery will be covered by the classified indemnity agreement and request the Department of Justice to assume responsibility for defense of these suits." Ex. B at 2. The contracting officer further interpreted the indemnification clause as "not extend[ing] to the chemical and industrial hazards resulting in the alleged exposure of U.S. National Guard and British Military Personnel who provided site security at Qarmat Ali to sodium dichromate." *Id.* at 1. Thus, the government's rejection of KBRSI's interpretation of the scope of the indemnification agreement clearly relates to the "interpretation of contract terms, or other relief arising under or relating to this contract." FAR 52.233-1(c). Significantly, the contracting officer did not raise any objections that the December 2010 nonmonetary claim improperly omitted a sum certain, nor did he request certification of the claim by KBRSI. Those objections only appear in the United States' motion to dismiss.

Notwithstanding this clear language from the contracting officer, the government contends that KBRSI's Complaint must be read as seeking money. To the contrary, KBRSI's Complaint clearly alleges that the government has failed to comply with its indemnification obligations and KBRSI is seeking the Court's intervention to resolve the scope of the government's contractual obligations. In alleging the elements of the government's breach of its indemnification obligations, KBRSI's Complaint referenced the costs incurred in defending against the third-party lawsuits. To recover those costs, however, KBRSI separately submitted the December 2012 certified monetary claim, as directed by the USACE contracting officer in his November 2011 final decision (and which the contracting officer refused to decide because he viewed the certified claim to be "substantially the same as the lawsuit filed by [KBRSI] in [this Court] on November 16, 2012 (Case No. 12-780)." Ex. C.

Accordingly, KBRSI's December 2010 nonmonetary claim was a valid claim for nonmonetary relief under the CDA.

B.  The Contracting Officer Issued a Final Decision on KBRSI's Claim

It is also clear that KBRSI sought and obtained a final decision on its December 2010 nonmonetary claim. A contractor need not explicitly request a final decision from the contracting officer, as "a request for a final decision can be implied from the context of the submission." *Ellett Constr.*, 93 F.3d at 1543 (internal quotations omitted); *see also M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327-28 (Fed. Cir. 2010). So long as the "basic requirements of the CDA are met, and the contracting officer knows the bases of the claim[,] . . . the request for a final decision may be inferred from the circumstances of the case." *Scan-Tech Security*, 46 Fed. Cl. 326, 333-34 (2000) (internal quotations omitted).

KBRSI's correspondence with the contracting officer demonstrates that it sought and received a final decision regarding the government's willingness to assume the defense and participate in the third-party tort suits.[1] For example, KBRSI's June 2011 request that the contracting officer "revisit the issue of what role it appropriately should play in the pending lawsuits," clearly stated that the "Army has a contractual obligation and it needs to live up to that obligation." Ex. F at 5. Such language, combined with KBRSI's initial request that "USACE participate directly in these lawsuits and/or assume direct responsibility for their defense," Ex. A at 4, expresses KBRSI's clear desire for a final decision from the contracting officer regarding

---

[1] *See Hamza v. United States*, 31 Fed. Cl. 315, 321 (Fed. Cl. 1994) (recognizing that "several documents, as a whole, might constitute a valid claim.")

7

his interpretation of the indemnification agreement and the government's obligations thereunder.[2]  *Ellett Constr.*, 93 F.3d at 1543.

Similarly, the contracting officer's failure to state that his November 18, 2011 letter was a "final decision" regarding the December 2010 nonmonetary claim does not preclude it from being a final decision.  *Scan-Tech Security*, 46 Fed. Cl. at 334; *Alliant Techsystems*, 178 F.3d at 1267.  The context of the response, not magic words, is dispositive.  The contracting officer's November 18 letter stated he had "carefully reviewed the verbal and written information" presented during the meeting with KBRSI, had counsel review that information, but [again] declined KBRSI's request that "USACE acknowledge that any recovery will be covered by the classified indemnity agreement and request the Department of Justice to assume responsibility for defense of these suits."  Ex. B at 2.  There is no language in the November 18 letter that indicates the contracting officer was still considering his position or that he could be swayed if additional information was provided.  Rather, even after "careful[]" consideration of KBRSI's arguments, the government would not participate in the defense of the third-party lawsuits.  The language from the contracting officer could not have been more clear.  KBRSI therefore obtained a final decision from the contracting officer regarding its December 2010 nonmonetary claim before filing the pending Complaint.[3]

---

[2] KBRSI's statement that it welcomed the opportunity to further discuss its position regarding the scope of the government's obligations does not negate KBRSI's implicit request for a final decision.  *Ellett Constr.*, 93 F.3d at 1544 (concluding that a contractor's settlement proposal, which the parties then fruitlessly negotiated for months, contained an implicit request for a decision from the contracting officer); *Scan-Tech Security*, 46 Fed. Cl. at 334; *Hamza*, 31 Fed. Cl. at 322 ("it is not inconsistent to implicitly request a final decision and at the same time explicitly request a meeting to discuss the issue.").

[3] The United States does not dispute that the contracting officer's November 18, 2011 letter was a final decision.

8

Thus, KBRSI timely filed its appeal of the contracting officer's final decision to resolve the scope of the government's indemnification obligations, an appeal over which this Court has jurisdiction.

III. THIS CASE SHOULD BE CONSOLIDATED WITH THE RELATED APPEAL OF THE DEEMED DENIAL OF KBRSI'S CERTIFIED CLAIM FOR A SUM CERTAIN

In its motion to dismiss, the United States contends that the Court lacks jurisdiction over this dispute because the December 2010 nonmonetary claim lacked a certified claim for a sum certain. The United States acknowledges but conveniently ignores that KBRSI filed its December 2012 certified monetary claim *as expressly directed by the contracting officer* and as required by the CDA. Moreover, the United States does not attempt to explain the inconsistency between its motion to dismiss and the contracting officer's refusal, just a few weeks ago, to issue a final decision on KBRSI's December 2012 certified monetary claim because "the claim is substantially the same" as the issues raised by this lawsuit. The United States cannot play both sides of this issue. USACE had its opportunity to review and decide the December 2012 certified monetary claim and declined to do so because of the pending case. The United States cannot now argue that the case should be dismissed in the absence of such a certified claim for a sum certain.

As set forth in the notice of related case filed with the appeal of KBRSI's certified claim (Case No. 13-00169), the two appeals now pending before this Court "involve the same parties, the same contract, and the same factual claims." Ex. D, Notice of Related Case. The United States cannot seriously dispute that the two cases are related, especially given the stated reason for the contracting officer's refusal to decide the December 2012 certified monetary claim. Although both cases assert claims based on the indemnification agreement between KBRSI and USACE, the most recently filed case (Case No. 13-00169) also contends that the government

9

breached several provisions of the RIO contract, as well as related FAR provisions, including the indemnity provision and other cost-reimbursement provisions.[4] Nonetheless, given the related nature of the cases, KBRSI has always anticipated that the two actions eventually would be consolidated. *See* Rules for the Court of Federal Claims 42. To prevent further efforts by the United States to play one proceeding against the other, KBRSI suggests that the Court consider consolidating the cases immediately.

The United States should not be permitted to engage in procedural gamesmanship to avoid final resolution of its contractual obligations. As contemplated by the CDA, the government has had a full and fair opportunity to consider and decide the contractual claims of KBRSI. *See M. Maropakis Carpentry, Inc.*, 609 F.3d at 1327-28. KBRSI has waited long enough and is now entitled to judicial review and resolution of all of its claims.

## IV. CONCLUSION

For the reasons set forth herein, the government's motion to dismiss should be denied and this case should be consolidated with Case No. 13-00169 to maximize judicial economy and conserve resources. KBRSI further requests that the Court hear argument before deciding the pending motion.

---

[4] KBRSI rejects the United States' perfunctory allegation in footnote 8 of its motion to dismiss that the statute of limitations has passed on KBRSI's breach of contract claim based on USACE's failure to ensure that Qarmat Ali was free of environmental hazards before directing KBRSI to begin work there. Because of the cost-reimbursement nature of the RIO contract, KBRSI's claim for breach of contract did not arise until after the United States first declined several years later to reimburse KBRSI for the additional contract costs related to the USACE's original contractual noncompliance. Given that the government did not expressly raise the statute of limitations as a basis for dismissal, KBRSI will reserve its arguments until the issue is properly before the Court.

| | |
|---|---|
| Dated:  April 9, 2013 | Respectfully submitted, |
| | /s/ Raymond Biagini |
| | Raymond Biagini |
| | McKenna Long & Aldridge LLP |
| | 1900 K Street, NW |
| | Washington, DC  20006 |
| | Telephone: (202) 496-7500 |
| | Facsimile: (202) 496-7756 |
| | rbiagini@mckennalong.com |
| | |
| | *Attorney for Kellogg Brown & Root Services, Inc.* |

OF COUNSEL:
Herbert Fenster
hfenster@mckennalong.com
McKenna Long & Aldridge LLP
1400 Wewatta Street, 7th Floor
Denver, Colorado  80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400

Kurt Hamrock
khamrock@mckennalong.com
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006
Telephone: (202) 496-7500
Facsimile: (202) 496-7756