# In the United States Court of Federal Claims

No. 12-780 C
(Filed March 7, 2014)

```
* * * * * * * * * * * * * *    *
KELLOGG BROWN & ROOT          *
SERVICES, INC.,               *
                              *
              Plaintiff,      *
                              *
       v.                     *
                              *
THE UNITED STATES,            *
                              *
              Defendant.      *
                              *
* * * * * * * * * * * * * * *  *
```

Contract Dispute; 41 U.S.C. §
7103 (Supp. V 2011); RCFC
12(b)(1); Presentment, Sum
Certain and Certification
Requirements.

*Raymond Biagini*, Washington, DC, for plaintiff. *Herbert Fenster*, Denver, CO, and *Kurt Hamrock*, Washington, DC, of counsel.

*J.Reid Prouty*, United States Department of Justice, with whom were *Stuart F. Delery*, Assistant Attorney General, *Bryant G. Snee*, Acting Director, Washington, DC, for defendant. *Alex P. Hontos*, United States Department of Justice, Washington, DC, of counsel.

———————————

**OPINION**

———————————

**Bush**, *Senior Judge*.

Before the court is defendant's fully briefed motion to dismiss, based on Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Oral argument was held on August 20, 2013; thereafter, supplemental briefing was permitted. For the reasons set forth herein, defendant's motion to dismiss is

granted.[1]

**BACKGROUND**[2]

## I.    The Contract

The parties refer to the contract at issue in this case, Contract No. DACA63-03-D-0005, as the Restore Iraqi Oil (RIO) contract.  Compl. ¶ 3; Def.'s Mot. at 1; Pl.'s Resp. at 2.  According to plaintiff, the RIO contract services were provided to the United States Army Corps of Engineers (the Corps) by Kellogg Brown & Root Services, Inc. (KBR) in support of Operation Iraqi Freedom, beginning in 2003.  Compl. ¶¶ 3, 6; Pl.'s Resp. at 2.  The services "assist[ed] in assessing, refurbishing, and rebuilding the Iraqi oil infrastructure."  Compl. ¶ 3.

## II.    The Dispute

According to the complaint, the RIO contract included an indemnification provision against "unusually hazardous" risks in contract performance.  Compl. ¶ 4.  While working at the Qarmat Ali Water Treatment Plant (Qarmat Ali), KBR personnel were provided with "force protection" by the government, protection which involved National Guard personnel and British soldiers.  *Id.* ¶¶ 6-7.  Sodium dichromate, a potentially hazardous chemical, had been used at Qarmat Ali and the site may have been contaminated with this chemical.  *Id.* ¶ 6.

KBR was eventually sued (hereinafter, the third-party suits) by persons involved in force protection at Qarmat Ali who claimed that they had been injured by exposure to sodium dichromate and that KBR was subject to tort liability for those injuries.  *Id.* ¶ 7.  A dispute arose between KBR and the Corps as to whether the indemnification provision of the RIO contract required the government to "directly participate in the lawsuits and/or assume direct responsibility for their

---

[1]/  Plaintiff's supplemental brief included a cursory request for a second oral argument which the court rejects as unnecessary.  Pl.'s Supp. Br. at 1-2.

[2]/  The facts recounted here are taken primarily from the complaint, with additional facts provided by the parties' briefs and attachments thereto.  The court makes no findings of fact in this opinion other than those necessary to resolve defendant's jurisdictional challenge to the complaint.  Unless otherwise noted, the facts are undisputed.

defense as provided by the terms of the indemnification agreement." *Id.* ¶ 8.  The parties disagree as to whether KBR submitted a proper claim to the contracting officer (CO) regarding this dispute.

## III.    The Alleged Claim

No copy of the "claim" presented to the CO by KBR is attached to the complaint.  The complaint is vague as to the timing of the filing of a "claim" with the CO, and as to the specific content of any written document that might have been provided to the CO in that regard.  *See* Compl. ¶ 8 (stating that after the lawsuits against KBR had been filed, KBR "subsequently submitted a request to the . . . contracting officer"), ¶ 9 (stating that KBR and the CO "exchanged correspondence"), ¶ 19 (alleging that the CO responded on April 6, 2011 to KBR's "initial request"), ¶ 22 (stating that KBR provided explanatory information to the CO on June 9, 2011), ¶ 31 (noting simply that KBR "submitted its request" to the CO).  There is, furthermore, no allegation in the complaint that KBR submitted a written claim alleging that a sum certain was due KBR under the contract, that KBR certified the amount of any such sum certain, or that KBR was requesting a final decision of the CO on such a certified claim.

## IV.    The Alleged Final Decision on the Claim

The complaint references two communications from the CO which are described, to some degree, as denials of KBR's "claim."  Compl. ¶¶ 21, 23.  The first was sent on April 6, 2011, when the CO is alleged to have:

> declined to participate directly in these lawsuits [against KBR] and/or assume direct responsibility for their defense[;]
>
> [a]cknowledg[ed] that KBR[] operated under "less than ideal conditions," [but] determined that "any litigation costs that [KBR] incurs as a result of this litigation are not covered by the indemnity agreement[]"[;] . . .
>
> requested additional information from KBR[] such as copies of the underlying complaints and

3

> insurance-related information so that [the Corps] could
> "evaluate any potential settlement and the risk of
> litigation."

*Id.* ¶¶ 19-21.  The second communication was sent on November 18, 2011, when the CO, after considering additional information provided by KBR, is alleged to have "finally denied KBR[]'s request that the government comply with its obligations under the indemnification agreement."  *Id.* ¶ 32; *see also id.* ¶ 23 (stating that the "November 18, 2011 letter den[ied] KBR[]'s request for indemnification of the third-party claims").  Both letters from the CO, one sent on April 6, 2011 and the other sent on November 18, 2011, suggested that KBR might "choose to file a claim under the Contract Disputes Act for its costs of defense [of the third-party suits] and any resulting judgment or settlement."  Def.'s Mot. Ex. B at 1; *see also id.* Ex. D at 2 (same).  The court reserves further discussion of the factual background of this case for the analysis section of this opinion.

## DISCUSSION

## I.    Standard of Review for a Motion to Dismiss for Lack of Jurisdiction

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988).  Nonetheless, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748.  When, as here, jurisdictional facts are challenged, the court must weigh the evidence presented and must make findings of fact pertinent to its jurisdiction.  *See, e.g.*, *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003) ("A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint . . . .") (citations omitted).

Plaintiff's burden, in this circumstance, is to establish jurisdiction by competent proof. *McNutt*, 298 U.S. at 189. The court's fact-finding in this regard is not limited to the pleadings. *E.g.*, *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991) (citations omitted); *Reynolds*, 846 F.2d at 747. If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

## II.    Pertinent Jurisdictional Requirements of the Contract Disputes Act

The Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109 (Supp. V 2011), is a money-mandating source of law sufficient to confer jurisdiction in this court under the Tucker Act, 28 U.S.C. § 1491 (2012). *See* 28 U.S.C. § 1491(a)(2) (citing 41 U.S.C. § 7104(b)(1)); *Salt River Pima-Maricopa Indian Cmty. v. United States*, 86 Fed. Cl. 607, 616 (2009) (citations omitted); *see also* Compl. ¶ 12. For this court to exercise jurisdiction over a CDA claim, however, the contractor must have first presented a written claim to the contracting officer. 41 U.S.C. § 7103(a)(1)-(2); *see, e.g.*, *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (*M. Maropakis*) (stating that "for the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim – a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision"). The contractor must submit the claim to the contracting officer within six years after the accrual of the claim. 41 U.S.C. § 7103(a)(4).

Both the presentment requirement and the six-year limitations period for the submission of CDA claims are deemed to be jurisdictional requirements for the litigation of CDA claims in this court. *See, e.g.*, *Arctic Slope Native Ass'n v. Sebelius*, 583 F.3d 785, 793 (Fed. Cir. 2009) (stating that "the timely submission of a claim to a contracting officer is a necessary predicate to the exercise of jurisdiction by a court or a board of contract appeals over a contract dispute governed by the CDA"). For claims that exceed $100,000, a further jurisdictional requirement is that the claim presented to the contracting officer be certified by the contractor. 41 U.S.C. § 7103(b)(1); *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1112 & n.3 (Fed. Cir. 2013) (*Northrop Grumman Computing*). An additional requirement for a CDA claim filed in this court is that the suit be filed within one year of the contractor's receipt of the final decision issued by the contracting officer on that claim. *See* 41 U.S.C. § 7104(b)(3); *Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1380 (Fed. Cir. 2007).

## III.   Analysis

### A.   The Indemnification Provision

#### 1.   The Content of the Indemnification Clause

Plaintiff alleges, and there appears to be no dispute, that an indemnification clause was incorporated by reference into the RIO contract.  *See, e.g.*, Pl.'s Supp. Br. Ex. A-1 at 27.  The totality of the text of the clause (and, specifically, of an important definition referenced in that clause) can only be discerned, however, from correspondence quoting portions of the contract documents and by reference to the Federal Acquisition Regulation (FAR).[3]  This may be because portions of "[t]he actual terms of the indemnification provision are [or were] classified as 'SECRET.'"  Compl. ¶ 4.  Nevertheless, for purposes of the jurisdictional dispute now before the court, we need only refer to the publicized FAR provisions which describe the term "indemnification" – especially FAR 52.250-1 Alt. 1 (hereinafter FAR 52.250-1).  Because the meaning of the term "indemnification," as used in this case, is disputed, *see* Def.'s Supp. Br. at 3-4, the court provides an overview of the RIO contract's indemnification provision.

Under the authority of Public Law 85-804, 72 Stat. 972 (1958), codified at 50 U.S.C. §§ 1431-1435 (2006), certain emergency measures may be included in government contracts.  At issue here is FAR 52.250-1, titled "Indemnification under Public Law 85-804."  *See* Pl.'s Supp. Br. Ex. A-1 at 27; *see also* FAR 50.104-4; FAR 52.250-1.  Insertion of this particular indemnification clause in a government contract requires a formal request from the contractor and a formal authorization by the government in a Memorandum of Decision.  *See* FAR 50.104-3.  It is not necessary to reproduce here every provision of FAR 52.250-1 and related regulations, but the regulatory provisions set forth below are relevant to the dispute at hand.

---

[3]/ All citations to FAR provisions are to the current versions found in Title 48 of the Code of Federal Regulations.  Although amendments since 2003 have occurred in these and related provisions, these amendments largely concern the outline structure of the regulations, not the content.

Indemnification by the government in this case addresses the government's responsibility vis-à-vis the contractor's liability for certain risks encountered during contract performance:

> [T]he Government shall, subject to the limitations contained in the other paragraphs of this clause, indemnify the Contractor against –
>
> (1) Claims (including reasonable expenses of litigation or settlement) by third persons (including employees of the Contractor) for death; personal injury; or loss of, damage to, or loss of use of property . . . .

FAR 52.250-1(b).  Not every risk is covered by the indemnification clause – only "unusually hazardous or nuclear" risks are covered by the clause.  FAR 52.250-1(c).  Furthermore, the authorizing official must approve and incorporate into the contract a definition, particular to that contract and agreed to by the parties, of unusually hazardous risks.  FAR 50.104-3(b)(1)(ii), (b)(3).  Thus, one limitation on the scope of the government's indemnification is that "[t]his indemnification applies only to the extent that the claim, loss, or damage . . . arises out of or results from a risk defined in this contract as unusually hazardous or nuclear."  FAR 52.250-1(c).

Another significant limitation on the scope of the government's indemnification responsibilities regards the contractor's insurance coverage:

> This indemnification applies only to the extent that the claim, loss, or damage . . . is not compensated for by insurance or otherwise.  Any such claim, loss, or damage, to the extent that it is within the deductible amounts of the Contractor's insurance, is not covered under this clause.  If insurance coverage or other financial protection in effect on the date the approving official authorizes use of this clause is reduced, the Government's liability under this clause shall not increase as a result.

7

FAR 52.250-1(c).  There are reporting requirements under these regulations regarding the contractor's insurance coverage, FAR 50.104-3(a)(1)(iii)-(vi), (a)(2), and provisions governing the reimbursement of certain insurance expenditures by the contractor, FAR 52.250-1(i).  Thus, the contractor's insurance coverage may also affect the scope of the government's indemnification responsibilities under the clause.

Finally, the indemnification clause contains several provisions which relate to the litigation of third-party suits against the contractor.  The contracting officer must be informed of such claims and be provided any pertinent information the government requires.   FAR 52.250-1(g)(1)-(3).  The contractor must also "[c]omply with the Government's directions and execute any authorizations required in connection with settlement or defense of claims or actions."  FAR 52.250-1(g)(4).  In addition, "[t]he Government may direct, control, or assist in settling or defending any claim or action that may involve indemnification under this clause."  FAR 52.250-1(h).

## 2.    The Definition of Unusually Hazardous Risks

While the body of the contract lacks a definition of the term "unusually hazardous risks," KBR sent a letter to the CO on December 29, 2010 (hereinafter the December 2010 letter) which contains a lengthy excerpt from the Memorandum of Decision setting forth the definition of unusually hazardous risks.  Neither the accuracy of this excerpt nor the incorporation of this definition of unusually hazardous risks into the RIO contract appears to be disputed.  According to the December 2010 letter, unusually hazardous risks include the risks of

> fire, explosion, combustion or detonation of
> hydrocarbons or other combustible substances, or of
> munitions, explosives, pyrotechnics and ordnance of all
> types, whether military or nonmilitary;

> exposure to lethal chemical agents, biological agents,
> radioactivity or nuclear materials.  The term 'lethal

8

chemical agents' for the purposes of this clause, means (i) the agents GB, VX or mustard, (ii) any other military chemical agent encountered at the work site, or (iii) any other highly toxic, carcinogenic, mutagenic, teratogenic or psychotropic chemical resulting from a reaction with the items listed in (i) or (ii) above;

sudden or nonsudden release of hydrocarbons or other toxic or hazardous substances or contaminants into the environment, including subsurface release;

failure of equipment or failure to control a wild well.

Def.'s Mot. Ex. A at 3-4.  Plaintiff's opposition brief focuses on the third type of unusually hazardous risks, "sudden or nonsudden release of . . . toxic or hazardous substances or contaminants into the environment," as support for KBR's CDA claim for indemnification against third-party claims related to its contract performance at Qarmat Ali.  Pl.'s Resp. at 2 (alteration in original).  Thus, the RIO contract appears to have defined unusually hazardous risks, *i.e.*, the risks which would trigger the indemnification provision set forth in FAR 52.250-1, to include the release of toxic or hazardous substances or contaminants into the environment.

### B.    KBR's Indemnification Request

Although there is considerable ambiguity in KBR's communications with the Corps, and a similar lack of clarity in plaintiff's attempts to describe these communications in its complaint and briefing before this court, the court has discerned and sets forth here the series of KBR's requests for indemnification communicated to the CO.  There are four key documents in this course of communication:  (1) the letter titled "Re:  DACA63-03-D-0005; Request for 85-804 Indemnification," sent by KBR on December 29, 2010 (the December 2010 letter); (2) the letter titled "Subject:  Contract No. DACA63-03-D-0005; Request for Indemnification, KBR Letter dated December 29, 2010," sent by the CO on April 6, 2011 (the April 2011 letter); (3) the letter titled "Re:  Response to Request

for 85-804 Indemnification, Contract No. DACA63-03-D-0005," sent by KBR on June 9, 2011 (the June 2011 letter); and, (4) the letter titled "Subject:  Contract No. DACA63-03-D-0005; Request for Indemnification, Meeting with Contracting Officer and Counsel on August 3, 2011," sent by the CO on November 18, 2011 (the November 2011 letter).  Def.'s Mot. Exs. A-D.  As noted earlier in this opinion, the complaint failed to identify a particular document as KBR's indemnification claim presented to the contracting officer.  Also, as similarly noted, the complaint identifies the November 2011 letter, not the April 2011 letter, as the CO's final decision on KBR's "claim."  *See* Compl. ¶¶ 13, 32.  *But see id.* ¶ 21 (describing the April 2011 letter as a "denial" of KBR's request).

    In opposing defendant's motion to dismiss, plaintiff finally identifies the December 2010 letter as its indemnification claim presented to the CO.  Pl.'s Resp. at 1-9; Pl.'s Supp. Br. at 4-5.  This seemingly primary reliance on the December 2010 letter is not without nuance, however.  According to plaintiff, "KBR's December 2010 request, both standing alone and when viewed in light of subsequent interaction with the United States, constitutes a . . . 'claim' for purposes of the Contract Disputes Act."  Pl.'s Supp. Br. at 4; *see* Oral Argument Transcript (Tr.) at 2:32 PM (suggesting that the December 2010 letter and subsequent correspondence rise to the level of a CDA claim).  Plaintiff thus relies on both the December 2010 letter and the June 2011 letter to describe its claim. *See* Pl.'s Resp. at 7-8 & nn.1-2.  The court will therefore review the content of the December 2010 letter, as well as that of the June 2011 letter, to discern the indemnification request presented to the CO.  In the court's view, the most accurate labels that could be placed on these documents are:  initial request (December 2010 letter); initial denial (April 2011 letter); request for discussions accompanied by rebuttal arguments (June 2011 letter); and, final denial (November 2011 letter).

    **1.    KBR's Initial Request for Indemnification in the December 2010 Letter**

    Perhaps the most important sentence in the December 2010 letter is the first one:

> Pursuant to Public Law 85-804 and Federal Acquisition
> Regulation ("FAR") clause 52.250-1, KBR provides to
> the United States Army Corps of Engineers ("USACE")
> this request for indemnification for claims asserted by
> third persons for personal injury allegedly arising out of
> risks previously defined as "unusually hazardous" under
> Contract No. DACA63-03-D-0005 and that USACE
> actively engage in the defense and resolution of certain
> claims and disputes arising under the contract.

Def.'s Mot. Ex. A at 1.  It is clear from the title of the letter and this sentence that
KBR is requesting some type (or types) of relief under the indemnification clause
of the RIO contract.  Both parties agree, Def.'s Mot. at 5 nn.3 & 7; Pl.'s Resp. at
4-5, that a claim under the CDA is defined by the FAR:

> Claim means a written demand or written assertion by
> one of the contracting parties seeking, as a matter of
> right, the payment of money in a sum certain, the
> adjustment or interpretation of contract terms, or other
> relief arising under or relating to the contract.

FAR 2.101.

The parties disagree, however, as to the nature of KBR's indemnification
claim, if it is indeed a claim, contained in the December 2010 letter.  Defendant,
for the most part, characterizes the December 2010 letter as a monetary claim
(albeit an invalid one).  Def.'s Mot. at 6-7; Def.'s Reply at 4; Def.'s Supp. Br. at
1-3.  Plaintiff insists that the claim in the December 2010 letter is nonmonetary,
because it seeks "'interpretation of contract terms, or other relief arising under or
relating to the contract,'" not money.  Pl.'s Resp. at 6 (quoting FAR 52.233-1(c));
*see* Pl.'s Supp. Br. at 4-5, 7, 10.  The court finds, as discussed below, demands for
both monetary and nonmonetary relief in the December 2010 letter.  The court
turns first to the monetary aspects of relief available under the RIO contract's
indemnification provision.

11

First, the legal definitions of the term indemnification are "[t]he action of compensating for loss or damage sustained" and "[t]he compensation so made." Black's, 9th ed. at 837.  Second, the indemnification clause in FAR 52.250-1 is of great utility, at least from the contractor's viewpoint, in establishing responsibility for the government to compensate the contractor for third-party claims against the contractor arising from unusually hazardous risks.  *See* FAR 52.250-1(b)(1). Third, the arguments presented by KBR for the insertion of this clause in the RIO contract focused in large part on the "catastrophic financial exposure for personal injury and property damage claims that is impossible for [KBR] or any private entity to endure" in the performance of the RIO contract.  Def.'s Mot. Ex. A at 7. In these circumstances, not even the most artfully-crafted letter can avoid the monetary aspect of a request titled "Request for 85-804 Indemnification."  *Id.* at 1.

The court now turns to the content of the December 2010 letter, which largely tracks the topics noted in the first sentence of that letter.  The first sentence, quoted in its entirety above, asks for "A" *and* "B," where "A" is "indemnification for claims asserted by third persons for personal injury allegedly arising out of risks previously defined as 'unusually hazardous' under Contract No. DACA63-03-D-0005," and "B" is "that [the Corps] actively engage in the defense and resolution of certain claims and disputes arising under the contract." Def.'s Mot. Ex. A at 1.  The December 2010 letter, beginning with its second paragraph, goes on to describe the lawsuits pending against KBR, *id.* at 1-2; the bases for these third-party suits, *id.* at 2; the negotiations KBR initiated to insert FAR 52.250-1 into the RIO contract (noting that KBR's letter requesting the indemnification clause, dated March 3, 2003, was attached to the December 2010 letter), *id.* at 2-3; the definition of unusually hazardous risks in the RIO contract, *id.* at 3-4; and KBR's contention that the claims in the third-party suits against KBR qualify for indemnification under the terms of FAR 52.250-1, *id.* at 4.  All of these contentions in the December 2010 letter fall under the category of "A," the general request for indemnification.

In the final two paragraphs of the December 2010 letter, KBR sets forth what most reasonably can be seen as two types of requests for relief.  The court reproduces the text of these paragraphs in their entirety:

Consistent with the positions they took back in 2003,

> KBR's insurers have denied coverage for [third-party]
> claims.  Nevertheless, KBR diligently continues to
> defend itself, at significant cost, against these claims, and
> KBR does not believe that it is liable for any damages.
> All future settlement demands will be provided for your
> review and for [the Corps] to provide any guidance
> concerning defense or settlement.

> Pursuant to the terms of FAR 52.250-1, KBR requests
> that [the Corps] participate directly in these lawsuits
> and/or assume direct responsibility for their defense.  In
> any event, KBR stands ready to comply with the [Corps']
> directions and instructions regarding the defense against
> these claims.

Def.'s Mot. Ex. A at 4.  The first request is not particularly direct, but it notes that KBR has experienced and will experience significant costs in the third-party suits, both in defense and settlement.  In the context of indemnification under FAR 52.250-1 and the preceding paragraphs of the December 2010 letter, KBR, no matter how indirectly, is invoking its right to compensation from the government.

After alluding to its litigation expenses and settlement exposure, and after referencing KBR's duties under the indemnification provision to accept guidance from the Corps as to the settlement of third-party claims, KBR presents its more directly-stated request – a request that the Corps "participate directly in these lawsuits and/or assume direct responsibility for their defense."  Def.'s Mot. Ex. A at 4.  This is, finally, after many, many paragraphs of "A," the "B" of the first sentence of KBR's December 2010 letter.  *See id.* Ex. A at 1 (requesting that the Corps "actively engage in the defense and resolution of certain claims and disputes arising under the contract").  In the court's view, the December 2010 letter contains a heavy, if somewhat obscured, emphasis on the monetary aspects of indemnification, and a very light but direct emphasis on encouraging the Corps to

actively participate in the litigation of the third-party suits against KBR.[4]  The court now turns to the remaining documents in the course of correspondence between the CO and KBR to confirm that the December 2010 letter contains requests for both monetary and nonmonetary relief.

### 2. The CO's Initial Denial of KBR's Indemnification Request in the April 2011 Letter

The CO read the December 2010 letter, as has the court, to contain requests for two types of relief, monetary as well as nonmonetary.  His denial of both requests is succinctly presented in his April 2011 letter:

> I conclude that any litigation costs that KBR incurs as a result of this litigation [of the third-party suits] are not covered by the indemnity agreement.  In addition, the Army has taken a neutral position in these lawsuits.  Accordingly, I must decline your request that the U.S. Army Corps of Engineers . . . request the Department of Justice to "participate directly in these lawsuits and/or assume direct responsibility for their defense."

Def.'s Mot. Ex. B at 1.  The CO then proceeds to the issue of whether KBR might eventually opt to submit a proper CDA claim for the costs of defense and settlement of the third-party lawsuits:

> I recognize that KBR was operating in less than ideal conditions and that it may choose to file a claim under the Contract Disputes Act for its costs of defense and any resulting judgment or settlement.  Should KBR desire to

---

[4]/  The court notes that the structure of the December 2010 letter tracks, in large part, the structure of FAR 52.250-1.  The letter addresses third-party claims, the definition of unusually hazardous risks, the issue of insurance coverage that might reduce the government's indemnification responsibility, and finally turns to the practical matters of managing the litigation tasks faced by the contractor.  These topics are addressed in a similar order in FAR 52.250-1.

do so, it must comply with applicable FAR provisions.

*Id.*  The CO concludes his letter with a reminder to KBR of its obligations under
FAR 52.250-1 to inform and consult with the Corps as to settlement negotiations
in the third-party suits and to explain any denials of insurance benefits that might
have covered defense or settlement costs in those suits.  *Id.* at 1-2.

The court notes that three aspects of the April 2011 letter suggest that the
CO did not consider KBR's December 2010 letter to contain a valid CDA claim.
First, the letter is not framed as a "final decision" on a CDA claim.  *See Alliant
Techsystems, Inc. v. United States*, 178 F.3d 1260, 1267 (Fed. Cir. 1999) (*Alliant*)
(noting that a final decision typically contains "standard language announcing that
it constitutes a final decision" (citing *Placeway Constr. Corp. v. United States*,
920 F.2d 903, 907 (Fed. Cir. 1990))).  Second, the letter does not contain a notice
of appeal rights, as required for any final decision on a CDA claim by 41 U.S.C.
§ 7103(e).  Third, the CO states that KBR might wish to submit a CDA claim for
any monetary relief under the indemnification provision, which indicates that the
CO did not interpret KBR's December 2010 letter to contain a valid monetary
claim.

It is also true that no statement in the December 2010 letter announced that
KBR was seeking a final contracting officer decision on either its monetary or its
nonmonetary request.  Although neither that fact nor the CO's interpretation of the
December 2010 letter is dispositive in determining whether the December 2010
letter is a claim as defined by FAR 2.101, the ambiguous wording of KBR's
December 2010 letter presents a problematic example of a CDA claim, if it is
indeed a claim under the CDA.  *See infra*.  The court now turns to the June 2011
letter, in which KBR requests further discussions regarding indemnification and
litigation participation, and disagrees with the Corps' interpretation of the
indemnification provision in the RIO contract.

**3.     KBR's Request for Discussions Accompanied by Rebuttal
Arguments in the June 2011 Letter**

In its June 2011 letter, KBR provides its "review[]" of the CO's "response to our request for indemnification under Public Law 85-804 for various personal injury claims brought by military personnel against KBR arising from its work for the Army in Iraq in early 2003." Def.'s Mot. Ex. C at 1.  The court notes, first, that in this opening statement KBR does not characterize the April 2011 letter as a denial of a CDA claim; instead, the CO's April 2011 letter is described as a response to a request.  KBR then proceeds to "provide the following comments to [the CO's] response and [notes that it] would welcome the opportunity to discuss these issues further with [the CO]." *Id.*

KBR then presents a lengthy "background" section within the June 2011 letter which describes the context for the work at Qarmat Ali and which highlights, in particular, various obligations of the government and the discovery of sodium dichromate contamination at the site. Def.'s Mot. Ex. C at 1-4.  The most significant addition to the background facts initially set forth in the December 2010 letter is a detailed set of allegations regarding the government's failure to provide a benign environment at Qarmat Ali. *Id.*  The "background" section of the June 2011 letter concludes with two paragraphs which emphasize the costs KBR has incurred and will continue to incur in defending and settling the third-party lawsuits against it:

> Although KBR believes that the claims against it ultimately will be proved meritless, KBR has been forced to expend considerable time and resources to defend itself against claims brought both by military personnel and its own employees.  For example, KBR prevailed in an arbitration action in which several former KBR employees sought to recover damages for their alleged sodium dichromate contamination.  The arbitrator ultimately concluded that none of the employees suffered an injury caused by sodium dichromate, although only after KBR mounted a full-blown defense in the arbitration.

> KBR also has been successful in obtaining the dismissal of several of the federal court actions for lack of personal

> jurisdiction and other legal issues.  KBR's vigorous
> defense of these actions, while successful, has resulted
> unavoidably in substantial fees and costs.  Such fees and
> costs will continue to rise as [two named] lawsuits move
> towards trial in early 2012.

*Id.* at 4.

KBR then turns to a rebuttal of the CO's rejection of its two requests that were contained in the December 2010 letter.  KBR frames its rebuttal arguments with another "A" *and* "B" sentence:

> Your previous letter [the April 2011 letter] indicated that
> the Army intended to deny KBR's request for ["A"]
> indemnification and ["B"] decline to participate directly
> in the lawsuits and assume direct responsibility for their
> defense.

Def.'s Mot. Ex. C at 4.  The court notes that the phrase "intended to deny" might indicate that KBR hoped that the denial of its requests in the CO's April 2011 letter was tentative, or, perhaps, that KBR agreed with the Corps that a CDA claim had not yet been submitted to the CO.  In any event, KBR's June 2011 letter proceeds to disagree with CO's interpretation of the scope of the indemnification provision in the RIO contract, focusing on the "A" portion of KBR's request, *i.e.*, the general request for indemnification.  *Id.* at 4-5.  Because of the classified nature of the provision, KBR also offers to discuss the indemnification provision in person "in a secure environment."  *Id.* at 5.

The June 2011 letter then turns to "B," KBR's request for the government to "revisit the issue of what role it appropriately should play in the pending lawsuits."  Def.'s Mot. Ex. C at 5.  This request raises the question of "whether the Army has a contractual or legal obligation to take a more active role in the litigation, either under Public Law 85-804, FAR Clause 52[.]228-7, or other contractual provision."  *Id.*  KBR's June 2011 letter also addresses the CO's

request for copies of litigation documents.  *Id.*

The penultimate paragraph of the June 2011 letter addresses insurance issues – both the CO's request for copies of pertinent coverage and denial of benefit documents, as well as KBR's position on the effect of insurance on any indemnification responsibilities of the government.  KBR states, for example, that "the presence or lack of insurance is not a relevant consideration [because] [t]he Army has a contractual obligation and it needs to live up to that obligation." Def.'s Mot. Ex. C at 5.  The concluding sentence of the June 2011 letter states that "KBR would welcome the opportunity to discuss these issues with you and other Army representatives in greater detail, and we believe that a meeting in the near future to discuss them would be useful and productive."  *Id.*

Plaintiff contends, as noted above, that the December 2010 letter and the June 2011 letter, together constitute a CDA claim.  Pl.'s Resp. at 7-8 & nn.1-2. The court reserves that question for further analysis.  What can be discerned from the June 2011 letter, however, is that KBR continued to present requests for both monetary and nonmonetary relief to the CO.  The June 2011 letter offers additional factual background and fleshes out additional legal arguments in support of these requests, but does not significantly alter the substance of the requests for relief presented in plaintiff's December 2010 letter.

### 4.    The CO's Final Denial of KBR's Indemnification Request in the November 2011 Letter

After discussions were held with KBR, the CO responded again to KBR's monetary and nonmonetary requests for relief under the indemnification provision of the RIO contract in a letter dated November 18, 2011.  Def.'s Mot. Ex. D.  Key portions of the CO's November 2011 letter are substantially the same as the CO's April 2011 letter:  (1) a description of the negotiations regarding the adoption of the indemnification clause and the RIO contract's definition of unusually hazardous risks; (2) the CO's determination that the claims in the third-party suits against KBR are not within the scope of that clause; (3) the CO's specific finding "that any litigation costs that KBR incurs as a result of this litigation [of the third-party suits] are not covered by the classified indemnity agreement"; (4) the CO's

18

specific rejection of KBR's request that the government "request the Department of Justice to assume responsibility for defense of these suits"; (5) the CO's statement that "KBR . . . may choose to file a claim under the Contract Disputes Act for its litigation costs and any resulting judgment or settlement [and that] [s]hould KBR desire to do so, it must comply with applicable FAR provisions"; and, (6) a directive that KBR must consult with the CO regarding settlement activities in the third-party lawsuits. *Id.* Thus, the CO's November 2011 letter confirms, as do all of the documents reviewed here, that KBR presented, in its December 2010 letter as well as in its June 2011 letter, both monetary and nonmonetary requests for relief under the indemnification provision of the RIO contract.

The only new information of any substance contained in the CO's November 2011 letter is additional legal argument. First, the CO discusses risks at Qarmat Ali and distinguishes those from the unusually hazardous risks contemplated by the indemnification provision in the RIO contract. Def.'s Mot. Ex. D at 1. Second, the CO addresses plaintiff's contention, extensively argued in KBR's June 2011 letter, that the government failed to provide a benign environment at Qarmat Ali. *Id.* at 1-2. In this regard, the CO notes that this allegation was brought long after the events in question had transpired. *See id.* at 1 ("It was not until well after this [third-party] litigation had been filed that KBR complained that the Army had failed to provide benign conditions. Assuming that the Army failed to comply with this provision, KBR waived that failure by continuing to perform without complaint."). Despite these additional underpinnings to the CO's rejection of KBR's request for indemnification under the RIO contract, the court finds no substantive variance between the CO's denial of KBR's requests in April 2011 and his second denial of these requests in November 2011. Furthermore, there is no indication in the CO's November 2011 letter, using the measures noted above for his April 2011 letter, that the CO considered the communications received from KBR, beginning with the December 2010 letter and continuing through the June 2011 letter, to constitute a claim under the CDA.

### C.   KBR's Indemnification Request Constitutes a Claim Requesting Two Types of Relief

Plaintiff insists that KBR's December 2010 letter was a claim presented to the contracting officer, as the term "claim" is defined in FAR 2.101 and relevant precedent.  Pl.'s Resp. at 7-8 & nn.1-2; Pl.'s Supp. Br. at 4-5.  Defendant does not concede that the December 2010 letter was a claim, *see* Def.'s Reply at 2-3 & n.1; Def.'s Supp. Br. at 2-3, but does not respond to the precedent cited by plaintiff.  Because the presentment requirement is jurisdictional for a CDA suit in this court, the court is obliged to resolve this issue before proceeding to defendant's Rule 12(b)(1) arguments.

As the court has noted, KBR's December 2010 letter, even as supplemented by the June 2011 letter, did not explicitly label itself as a CDA claim or as a request for a final decision of the CO.  Plaintiff recognizes, therefore, that the presentment requirement may only be satisfied if an "implicit request for a final decision" can be discerned in KBR's letters.  Pl.'s Resp. at 8 n.2.  Plaintiff relies on two decisions of the United States Court of Appeals for the Federal Circuit, as well as two decisions of this court, to support its contention that its letters constitute a claim:  *M. Maropakis*, 609 F.3d at 1327-28; *James M. Ellett Construction Co. v. United States*, 93 F.3d 1537, 1543-44 (Fed. Cir. 1996) (*Ellett Construction*); *Scan-Tech Security, L.P. v. United States*, 46 Fed. Cl. 326, 333-34 (2000); *Hamza v. United States*, 31 Fed. Cl. 315, 321-22 (1994).  KBR relies on two basic propositions in these cases:  (1) that a CDA claim may be inferred or implied in written documents; and, (2) that multiple documents may be read together to present a CDA claim.  The court will examine the cases relied upon by plaintiff to determine whether these propositions, and the application of these propositions in the cases cited, reflect that KBR's letters presented a claim to the CO.

*M. Maropakis* is of little assistance to KBR.  Although the "implicit request" path to interpreting a letter as presenting a CDA claim was noted in that decision, the letter in question in *M. Maropakis* was *not* considered to imply the CDA claim asserted by the contractor, in part because the letter "did not request a final decision."  609 F.3d at 1328.  Further, the court notes that one of the cases relied upon by *M. Maropakis* for the possibility of finding an "implicit request" in a contractor's letter is distinguishable from the instant case.  *See id.* (citing *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1579 (Fed. Cir. 1992), *overruled in part on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572

(Fed. Cir. 1995) (*en banc*)).  In *Transamerica*, the Federal Circuit found an implicit request in a letter to be a CDA claim because, at least in part, the agency itself recognized the letter to be a claim.  973 F.2d at 1578-79 & n.2 (citing *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 588-89, 592 (Fed. Cir. 1987)).  Here, as discussed *supra*, the CO did not consider either the December 2010 letter or the June 2011 letter to present a CDA claim.  The court finds no support in *M. Maropakis* for plaintiff's contention that KBR's letters presented a claim to the CO.

Plaintiff also gains little support from *Ellett Construction* other than the general rule that an implicit request for a final decision *may* be discerned in a contractor's letter to the CO:

> [A CDA claim] does not require an explicit request for a final decision; "as long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met." *Transamerica*, 973 F.2d at 1576. Thus, "a request for a final decision can be implied from the context of the submission." [*Heyl & Patterson, Inc. v. O'Keefe*, 986 F.2d 480, 483 (Fed. Cir. 1993)].

93 F.3d at 1543.  Otherwise, the facts in *Ellett Construction* are too dissimilar to provide any guidance in the interpretation of KBR's letters.  The Federal Circuit considered whether a settlement proposal regarding a termination for convenience might also constitute an implied request for a final decision.  *Ellett Construction,* 93 F.3d at 1543-44.  No settlement proposal is at issue in this case; the distinguishable factual circumstances in *Ellett Construction* shed no insight on KBR's letters, so the court must look elsewhere for applicable precedent.

Plaintiff relies on *Alliant* for other principles, but that Federal Circuit decision also considered whether a letter from a contractor constituted a CDA claim.  The parties in *Alliant* did not dispute that the following language in the letter requested a final decision from the contracting officer:

> "[I]f you disagree with our position, please consider this letter a claim and request for a final decision under the CDA."

178 F.3d at 1265.  No such language was included in KBR's two letters to the CO. In the absence of such language, the court's task is to determine whether the contractor's intent was to request a final decision from the CO.  *See, e.g.*, *Transamerica*, 973 F.2d at 1576 (asking whether "the contractor desires by its submissions . . . a final decision").  This is a fact-specific inquiry, where decisions in other cases of this court are of limited value.

This court in *Scan-Tech* found an implied request for a final decision in a letter which attached invoices for payment.  46 Fed. Cl. at 334.  Here, KBR's letters attached numerous documents, including court documents such as complaints and briefs from the third-party suits, but did not attach invoices for the legal bills for defending against the third-party suits.  *Scan-Tech* is therefore distinguishable on its facts.

In *Hamza*, another case cited by plaintiff, this court discerned an "implicit request for a final decision" apparently because the contractor had indicated in his letters that denial of his additional rent request would cause him to litigate the issue.  31 Fed. Cl. at 322.  In its letters to the CO, KBR did not indicate that denial of its request for indemnification would lead to a lawsuit to enforce KBR's rights. Thus, *Hamza*, too, is distinguishable on its facts.

Finding no analogous facts in the cases cited by plaintiff, the court turns, as it must, to "'the context of the submission.'"  *Ellett Construction*, 93 F.3d at 1543 (quoting *Heyl & Patterson*, 986 F.2d at 483).  Here, KBR was facing numerous lawsuits and had already incurred two years' worth of litigation costs.  According to plaintiff's counsel at oral argument, KBR had been reimbursed for some of its arbitration costs to defend against claims of KBR employees but had not received payment for its litigation expenses in the third-party suits.  Tr. at 2:56 PM-2:57 PM.  As a large, experienced government contractor, one would expect KBR to clearly state a specific request for a final decision from the CO for any important claim.  Instead, the December 2010 letter is titled "DACA63-03-D-0005; Request

for 85-804 Indemnification," and neither of KBR's letters references the submission of a CDA claim or a request for a final decision on such a claim by the contracting officer.

In the end, the intent of KBR is not immediately evident and, thus, the status of KBR's letters presents a close question. There is a decision from this court which may provide further guidance in determining the contractor's intent in submitting a communication to a contracting officer. *See BLR Grp. of Am., Inc. v. United States*, 96 Fed. Cl. 9 (2010). In *BLR Group*, the contractor reacted to a negative performance evaluation. 96 Fed. Cl. at 11-12. The contractor later attempted to premise a suit in this court on a submission to the contracting officer that requested that the performance evaluation be revised. *Id.* at 12. This court found that it lacked jurisdiction over the suit because the "plaintiff, in submitting a response to the Air Force's evaluation, was acting within the confines of the FAR's performance evaluation procedures and was not submitting a claim pursuant to the CDA." *Id.* at 14. Thus, *BLR Group* suggests that this court should consider whether a submission from the contractor serves some purpose other than that of filing a CDA claim.

One possible interpretation of KBR's letters is that they were submitted as part of the litigation management procedures required by FAR 52.250-1(g)-(h), not as a CDA claim. This would explain why the CO viewed KBR's letters as more of a preliminary exploration of the parties' responsibilities regarding the third-party suits, and why he suggested that KBR might choose to later file a CDA claim for its litigation defense and settlement costs. The court is not certain, however, that plaintiff's "Request for 85-804 Indemnification" falls neatly into any of the reporting or consulting provisions outlined in FAR 52.250-1(g)-(h).

Although the court cannot endorse plaintiff's statement that the December 2010 and June 2011 letters "express[] KBR['s] clear desire for a final decision from the contracting officer regarding his interpretation of the indemnification agreement and the government's obligations thereunder," Pl.'s Resp. at 7-8, KBR's letters express the desire of KBR to obtain a decision on its monetary and nonmonetary requests. Under the precedent cited by plaintiff and discussed herein, the court finds that KBR's letters contain an implied request for a final decision of the CO. *Ellett Construction*, 93 F.3d at 1543. Having determined that

KBR submitted a claim to the contracting officer, the court must decide whether that claim was valid under the CDA and relevant precedent.[5]

### D.    KBR's Monetary Claim Was Invalid

Defendant's challenge to the validity of KBR's monetary claim for indemnification of its third-party litigation defense and settlement expenses is two-pronged.  First, citing *M. Maropakis*, 609 F.3d at 1329, and *Reflectone*, 60 F.3d at 1576, among other authorities, the government argues that failure to present a monetary claim for a "sum certain" renders any monetary claim in the December 2010 and June 2011 letters invalid.  Def.'s Mot. at 6.  Second, largely relying on *M. Maropakis*, 609 F.3d at 1329, the government argues that KBR's failure to certify its claim of "well over $100,000" provides an additional reason to render any monetary claim in the December 2010 and June 2011 letters invalid.  Def.'s Mot. at 8.  It is undisputed that the KBR letters in December 2010 and June 2011 fail to state a sum certain and that the monetary claim therein is not certified.  Additionally, plaintiff sets forth no contention that any monetary claim for litigation expenses, as of December 2010 when KBR had incurred two years' worth of legal fees, would be under $100,000 so as to not require certification.  *Cf.* Compl. ¶ 36 (asserting that after less than two additional years of litigation, KBR had incurred litigation expenses that totaled "in excess of fifteen million dollars").

Plaintiff's only defense against the invalidity of KBR's monetary claim, as submitted to the CO in its letters, is that there *was no monetary claim* submitted to the CO.  Pl.'s Resp. at 1-2, 4-7; Pl.'s Supp. Br. at 4-5.  The court, however, after a thorough examination of the December 2010 and June 2011 letters, concludes that KBR *did* present a monetary claim to the CO.  *See supra.*  Only one of plaintiff's contentions disavowing the monetary nature of its indemnification request in its

---

[5]/ If the court has erred in its analysis and no CDA claim can be discerned in either the December 2010 letter and/or the June 2011 letter, plaintiff's suit in this court would necessarily be dismissed for lack of jurisdiction based on KBR's failure to first seek a final decision from the CO on its claim.  *See, e.g.*, *M. Maropakis*, 609 F.3d at 1328.

letters merits comment here.[6]  Plaintiff argues that "[s]ignificantly, the contracting officer did not raise any objections that the December 2010 nonmonetary claim improperly omitted a sum certain, nor did he request certification of the claim by KBR[]."  Pl.'s Resp. at 6.  This is hardly suprising, however, because, as noted *supra*, the CO did not consider the December 2010 letter or the June 2011 letter to present a CDA claim.

The court finds that the monetary claim presented to the CO in KBR's December 2010 and June 2011 letters was invalid for failure to request a sum certain and for not being certified by KBR.  Having failed to present a valid monetary claim to the CO, the court has no jurisdiction over any monetary claim stated in KBR's complaint.  *See, e.g.*, *Northrop Grumman Computing*, 709 F.3d at 1112 & n.3; *M. Maropakis*, 609 F.3d at 1328.  In fact, plaintiff concedes that should any portion of the complaint be construed to contain a claim for monetary damages for third-party litigation defense and settlement expenses, the court must dismiss that claim.  Pl.'s Supp. Br. at 7.

Putting aside, for the moment, the question of what other claims might be contained in the complaint, the court agrees with defendant that a claim for money damages is clearly presented in the complaint's prayer for relief.  The first paragraph of the prayer for relief requests

> [t]hat this Court grant KBR[]'s request for indemnification because [the Corps'] denial of KBR[]'s request breached the contract and the indemnification agreement entered into pursuant to P.L. 85-804 and FAR Clause 52.250-1, and was otherwise contrary to law.

Compl. at 8.  The second paragraph of the prayer for relief requests

> [t]hat this Court direct the government to indemnify

---

[6]/ Most of plaintiff's arguments focus on the nature and validity of KBR's nonmonetary claim in the December 2010 letter, a topic which is addressed in the next section of this opinion.

> KBR[] for all fees, costs, settlements, final judgments
> and all other damages resulting from such tort litigation.

*Id.* The only other demand in the prayer for relief is for the award of "such other relief as the Court deems proper, including but not limited to interest, fees, and other related costs." *Id.* The plain language of the prayer for relief clearly seeks money damages for "all fees, costs, settlements, final judgments and all other damages resulting from [the third-party] tort litigation." *Id.*

Plaintiff creatively construes the complaint to exclude any request for money damages. According to plaintiff,

> KBR[]'s Complaint clearly alleges that the government
> has failed to comply with its indemnification obligations
> and KBR[] is seeking the Court's intervention to resolve
> the scope of the government's contractual obligations.

Pl.'s Resp. at 6. Plaintiff argues that the court must read the complaint "as a whole" to determine that "KBR did not seek a monetary award from the Court." Pl.'s Supp. Br. at 6-7.

Here, the court has read the complaint as a whole, including the prayer for relief, and comes to the opposite conclusion, *i.e.*, that the complaint contains a claim for money damages. *See* Compl. ¶ 10 (stating that the Corps "has also refused to indemnify KBR[] for the costs of defending against the various lawsuits"), ¶ 30 (stating that "KBR[] is entitled to indemnification by the government of all '[c]laims (including reasonable expenses of litigation or settlement) by third persons (including employees of the Contractor) for death; personal injury; or loss of, damage to, or loss of use of property.' FAR Clause 52.250-l(b)(l)"), ¶ 31 (stating that "[p]ursuant to P.L. 85-804 and FAR Clause 52.250-1, KBR[] submitted its request to the [Corps] for indemnification for claims being asserted by third persons for personal injury allegedly arising out of 'unusually hazardous' risks associated with KBR[]'s performance under the RIO contract"), ¶ 33 (stating that the Corps "has refused to indemnify KBR[] for the

costs of defending against the various third-party lawsuits"), ¶ 36 ("The government's breach has damaged KBR[]. To date, KBR[] has incurred substantial legal fees, costs, and other related expenses in defending against the underlying tort suits in an amount in excess of fifteen million dollars."), ¶ 37 ("KBR[] is entitled to recover all such fees, costs, and other related expenses in connection with its defense of the various third-party claims arising from its work under the RIO contract, including these and other such fees, costs, expenses, and other monetary liabilities that may be incurred in the future."); *see also id.* at 8 (requesting that "this Court direct the government to indemnify KBR[] for all fees, costs, settlements, final judgments and all other damages resulting from such tort litigation").

Although plaintiff attempts to characterize the complaint as merely a request for declaratory relief, Pl.'s Supp. Br. at 7, the plain language of the complaint, in sections titled "introduction," "count one [the sole count] – breach of contract," and "prayer for relief," references money damages owed KBR under the indemnification provision of the RIO contract. Thus, the complaint in this case is determined to contain a claim for money damages. However, because that claim for money damages, as submitted to the CO, was invalid for the reasons discussed above, this court lacks subject matter jurisdiction and therefore dismisses KBR's request for monetary damages in this suit.

### E. KBR's Nonmonetary Claim in Its Letters Cannot Support Any of Plaintiff's Claims in the Complaint

#### 1. KBR's Nonmonetary Claim in Its Letters Cannot Support Plaintiff's Monetary Claim in the Complaint

The court now turns to consider whether KBR's *nonmonetary* request that the government actively participate in the third-party lawsuits could serve to support plaintiff's *monetary* claim in the complaint filed here. As a threshold matter, defendant relies on *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003), for the proposition that the appeal of a denied CDA claim must seek essentially the same relief as the CDA claim previously presented to the contracting officer. Def.'s Mot. at 7; Def.'s Reply at 2-3. Thus, in defendant's

view, it is elementary that any nonmonetary claim presented to the CO cannot support a monetary claim in this court.

Plaintiff does not refute this particular argument, perhaps because plaintiff's position is that there is *no monetary claim* in the complaint. *See, e.g.*, Pl.'s Supp. Br. at 7 (stating that "KBR did not seek a monetary award from the Court" in the complaint). As contended by the government, the law is clear that "the same claim must be presented to the Court of Federal Claims as was decided by the contracting officer." *Ace Constructors, Inc. v. United States*, 499 F.3d 1357, 1361 (Fed. Cir. 2007) (citing *Scott Timber*, 333 F.3d at 1365). Here, KBR's nonmonetary request to the CO, in both its December 2010 letter and its June 2011 letter, was a demand that the government participate in the defense of the third-party lawsuits against KBR. Def.'s Mot. Ex. A at 1, 4, Ex. C at 5. The nature of this request for relief is fundamentally different than a request for reimbursement of litigation defense and settlement costs.[7]

Although both nonmonetary and monetary requests for relief might have been included by KBR under the rubric "indemnification" in its communications with the CO, the two types of claims are different in nature. The court finds that KBR's nonmonetary request that the government actively participate in the third-party lawsuits against KBR is not the same as the monetary claim in the complaint. The court holds, therefore, that KBR's nonmonetary CDA claim presented to the CO cannot support this court's jurisdiction over KBR's monetary CDA claim.

## 2.    There Is No Nonmonetary Claim in the Complaint

Defendant argues that there is no nonmonetary claim in the complaint, because the complaint is essentially about money. Def.'s Mot. at 6-7; Def.'s Reply

---

[7]/ Indeed, in some respects the "participation" request could be seen as almost the opposite of a legal fees reimbursement request. The more participation provided by Department of Justice attorneys, the lower the amount of legal fees that KBR would expend in the third-party suits. *See* Tr. at 3:02 PM (plaintiff's counsel noting that if the government had taken over the defense of the third-party lawsuits in 2010, many of the legal fees actually incurred by KBR would not have been incurred).

at 3-4; Def.'s Supp. Br. at 2-4.  Defendant suggests that plaintiff's complaint is nothing more than an artful attempt to disguise a claim for money damages as a claim for contract interpretation, in order to avoid CDA requirements for claims which state a sum certain and the certification of claims exceeding $100,000. Def.'s Reply at 4.  Although the court cannot guess at the motivation of plaintiff in crafting its complaint, the court agrees with defendant that the gravamen of the complaint is a request for money.

Plaintiff asserts that the complaint asks for declaratory relief, although plaintiff concedes that the terms "declaratory relief" and "declaratory judgment" cannot be found in the complaint.  Pl.'s Supp. Br. at 6.  Even if the court were to read the complaint to include a request for declaratory relief, which it does not, such a request would merely mask what is an overt attempt to obtain indemnification from the government in the form of monetary damages.  In the end, it does not matter whether plaintiff characterizes the complaint as containing a request for declaratory relief – nor does it matter whether plaintiff claims that the gravamen of the complaint is a nonmonetary request for contract interpretation, not a monetary request for damages.  Pl.'s Supp. Br. at 5-7.  Such characterizations fail to alter the true nature of the claim and in that regard, numerous decisions of the boards of contract appeals have rightly rejected such monetary claims framed as requests for contract interpretation that fail to observe the requirements of the CDA.  *See, e.g., Eaton Contract Servs., Inc.*, ASBCA No. 52888, 02-2 BCA ¶ 32023 (Oct. 9, 2002); *Weststar Eng'g, Inc.*, ASBCA No. 52484, 02-1 BCA ¶ 31759 (Feb. 11, 2002); *Westinghouse Elec. Corp., Inc.*, ASBCA No. 47868, 95-1 BCA ¶ 27364 (Dec. 16, 1994).

Plaintiff does not cite any contrary authority that would allow the court to distinguish the holdings in *Eaton Contract Services*, *Weststar Engineering* or *Westinghouse* from the circumstances of this case, but merely relies on *Alliant* for the general principle that nonmonetary relief is available under the CDA.  *See* Pl.'s Resp. at 5 (citing *Alliant*, 178 F.3d at 1267, 1270); Pl.'s Supp. Br. at 5 (citing *Alliant*, 178 F.3d at 1267).  *Alliant*, however, did not address "nonmonetary" claims that are actually monetary claims dressed up in "contract interpretation" clothing, which is in effect how defendant has described the complaint here. Plaintiff also notes that nonmonetary claims do not need to be certified, Pl.'s Resp. at 5 (citing *Alliant* and two board of contract appeals cases), but this unremarkable

29

aspect of truly *nonmonetary* claims, which do not trigger the certification requirement of the CDA, 41 U.S.C. § 7103(b)(1), does nothing to refute the holdings in *Eaton Contract Services*, *Weststar Engineering* and *Westinghouse* which provide a rule of law applicable to KBR's complaint.[8]  Plaintiff concedes that it is the gravamen of the complaint that determines the outcome of the jurisdictional analysis.  Pl.'s Supp. Br. at 5-6; Tr. at 2:37 PM.  Because the gravamen of the complaint here is a request for indemnification in the form of money damages, the court cannot exercise jurisdiction over what plaintiff styles as a nonmonetary claim because that "nonmonetary" claim is essentially an invalid CDA claim for money damages.

> **3.    Plaintiff's Citations to Board of Contract Appeals Cases Discussing "Nonmonetary" Claims Cannot Preserve Plaintiff's Claims in the Complaint**

The two board of contract appeals cases cited by plaintiff do not redeem KBR's "nonmonetary" claim in the complaint.  First, in *Sims Paving Corp.*, DOTCAB No. 1822, 87-2 BCA ¶ 19928 (June 22, 1987), the board rejected a motion to dismiss premised, in part, on lack of certification of the contractor's claim.  However, the claim in that case, for the conversion of a termination for default to a termination for the convenience of the government, is quite dissimilar to the dispute here over the scope of the RIO contract's indemnification provision. *See* Ralph C. Nash, Jr., *Nonmonetary Claims:  Jurisdiction to Exercise Discretion*, 13 No. 11 Nash & Cibinic Report ¶ 57 (1999) ("Whatever may be the rules for other types of nonmonetary claims, the challenge by a contractor to a default termination of its contract is in a class by itself.").  Thus, although *Sims Paving* correctly concludes that nonmonetary claims do not, as a general rule, need certification, the analysis of the nonmonetary claim in that decision is inapposite to the claim presented in KBR's complaint.

---

[8]/  This court in *DaVita, Inc. v. United States*, 110 Fed. Cl. 71, 86 (2013), recognized that *Westar Engineering* correctly states the rule of law on this issue but did not find the rule in *Westar Engineering* to be applicable in the case before it.  The instant case is distinguishable from *DaVita* on its facts; to the extent that *DaVita* could be seen as supporting jurisdiction in this court for KBR's nonmonetary claim, the court respectfully disagrees with that interpretation of *DaVita*'s jurisdictional analysis of nonmonetary CDA claims.

Second, *Summit Contractors*, AGBCA No. 81-136-1, 81-1 BCA ¶ 14872 (Jan. 12, 1981), the other decision cited by plaintiff, was a Forest Service timber sales contract dispute.  The board considered a number of issues relevant to nonmonetary and monetary claims, and cited an example of a nonmonetary claim that did not require certification.  The example cited for illustrative purposes in *Summit Contractors* is not at all similar to the "nonmonetary" claim advanced by KBR in the complaint in this case:

> [The situation where the contract's] [r]emedy clause provides for non-monetary relief . . .  is illustrated in the case of Forest Service timber sale contracts by the contract section for adjustment of contract term for force majeure reasons.  Thus, the contract remedy clause permits the Board to extend the contract term for the period of excusable delay encountered by the contractor. In effect the relief is an allowance of additional time to harvest and remove timber from a sale.  Although such relief has a monetary value, it would be extremely difficult for a contractor to express the claim in terms of money.  This is so because any additional time granted is simply a right to harvest and remove timber at a purchase price which would have applied but for the excusable delay and the end result in money is unknown until performance in the time extension period has been completed.

*Summit Contractors*, 81-1 BCA ¶ 14872.  Thus, in the example described in *Summit Contractors*, a claim to extend a contract term to allow the harvest and removal of additional timber was seen as nonmonetary, not monetary, at least in part because the monetary value of the claim had not begun to be quantified and would be difficult to quantify.

In this case, however, KBR had already incurred two years' worth of legal fees before submitting the December 2010 letter to the CO, and, by the time KBR

came to this forum, KBR was estimating the quantum of its claim as a claim for at least $15,000,000.  *See* Compl. ¶ 36; Compl. Civil Cover Sheet; Def.'s Reply Ex. 1 at 4 (KBR's Securities and Exchange Commission filing describing the value of this lawsuit).  Thus, KBR's "nonmonetary claim for contract interpretation" submitted to the CO, Pl.'s Resp. at 5, and the "clear effort by KBR to seek review and reversal of the contracting officer's 'interpretation of contract terms'" in the complaint, Pl.'s Supp. Br. at 6, are not at all like the example of a nonmonetary claim discussed in *Summit Contractors*.  Plaintiff's reliance on *Summit Contractors* is misplaced.  Indeed, other portions of that decision indicate that KBR's complaint should be dismissed.

At issue in *Summit Contractors* was a restrictive interpretation of a timber sales contract, issued on June 25, 1980, as to which types of trees could be harvested by the contractor.  The board held that this was a final decision of the contracting officer on the claim submitted a week before by the contractor:

> [I]t is correct to view the contractor's June 17, 1980[] letter as a claim for a different interpretation of the contract.

> But the claim so considered by the contracting officer[] leads the contractor to seek relief [from this board of contract appeals] in the nature of specific performance or monetary damages to be quantified in a subsequent claim to be filed by the contractor for consideration.

*Summit Contractors*, 81-1 BCA ¶ 14872.  The board thus differentiated between the request for contract interpretation submitted to the contracting officer and the claims before the board in the appeal.  The contractor's appeal before the board set forth its requested relief as follows:

> If it is determined that the contracting officer's letter of June 25, 1980[] is a decision on a claim filed by the Appellant, that the Board sustain this appeal and that the

Board grant the following relief either cumulative[ly] and/or alternatively:

a.  Issue marking guidelines [for timber harvesting] in accordance with the contract as modified by agreement of the parties;

b. Issue marking guidelines in accordance with the contract;

c. Direct the United States Government to forthwith designate trees for cutting pursuant to said guidelines for cutting and removal by Appellant; and/or

d. Award Appellant its monetary damages, costs and lost profits according to proof.

*Id.* The board dismissed both types of claims before it (nonmonetary for specific performance and monetary for damages), but for different reasons.

The board offered the following jurisdictional analysis:

The contractor states that it will quantify its monetary damages, file a certified claim for such amount with the contracting officer and appeal any adverse decision.

The alternative relief sought, which appears to be in the nature of a request for specific performance in ma[r]king timber and establishing guidelines for marking, is outside the jurisdiction of the Board under the Act.  Such relief would not be available if the contract was still in effect, and it appears that the contract may have terminated in September 1980. . . .  Under the [Contract Disputes] Act, the contractor's course of action in a contract which has expired is to seek monetary damages for such claims as may have been reserved at the time of

executing the final payment release documents.

*Id.* The board thus held that the contractor's nonmonetary request for specific performance by the government was beyond its jurisdiction, and dismissed the nonmonetary claim for this reason. As for money damages, this claim was dismissed as premature because it was not yet a certified claim for money damages in a sum certain. *Id.* (citing *Harnischfeger Corp.*, ASBCA No. 23918, 80-2 BCA ¶ 14541 (June 11, 1980)).

The dismissal of the contractor's monetary claim (which was conditioned on a future certification that had not occurred) in *Summit Contractors* would be consonant with this court's dismissal of KBR's monetary claim in the present complaint. This holding in *Summit Contractors* thus lends more support to the government's motion to dismiss than to plaintiff's opposition to that motion.[9] The court now turns to a final issue: whether the complaint contains a request for specific performance by the Corps, and, if so, whether such a claim survives defendant's motion to dismiss.

> **4.      Any Nonmonetary Claim for Specific Performance of the United States to Defend KBR against Third-Party Suits Would Necessarily Be Dismissed for Failure to State a Claim upon Which Relief May Be Granted**

Neither party appears to interpret the complaint to contain a request for specific performance. *See* Def.'s Supp. Br. at 4 ("KBR's complaint never requests that the Court direct such a defense or make any finding that KBR is entitled to it."); Pl.'s Supp. Br. at 7 (describing the complaint as containing a nonmonetary

---

[9]/ Another board of contract appeals decision shows that KBR could have submitted a certified monetary claim for indemnification to the CO in December 2010. In *Boeing Co.*, ASBCA No. 54853, 06-1 BCA ¶ 33270 (Apr. 12, 2006), the contractor relied on Public Law 85-804 to submit a certified claim for "incurred and future toxic tort litigation costs uncompensated by insurance." *Id.* Jurisdictional challenges to this claim were rejected by the board. *Id.* The court cannot explain why KBR did not choose to submit a certified monetary claim to the CO, rather than the uncertified monetary claim in its letters to the CO.

claim for declaratory relief).  Although the nonmonetary claim in KBR's letters requests that the United States actively participate in defending and settling the third-party lawsuits against KBR, Def.'s Mot. Ex. A at 1, 4, Ex. C at 5; *see* Pl.'s Supp. Br. at 4 ("KBR's December 2010 [letter] request[s] . . . [that] the United States step in and assume KBR's defense in the underlying tort lawsuits . . . ."), there is no such request in the complaint filed in this court.  In the court's view, there is no request for specific performance by the United States in the complaint.

If plaintiff's broad references to indemnification under FAR 52.250-1 in the prayer for relief of its complaint could somehow be read to include a claim for specific performance by the United States, the court notes that such a claim would necessarily be dismissed for failure to state a claim upon which relief may be granted.  Here, the specific terms of FAR 52.250-1 afford discretion to the United States to participate in the defense of claims against its contractors protected by this contract provision.  *See* FAR 52.250-1(h) ("The Government *may* direct, control, or assist in settling or defending any claim or action that may involve indemnification under this clause.") (emphasis added).  Thus, should any demand for specific performance in this regard be discerned in the complaint, it would necessarily be dismissed because FAR 52.250-1 affords the United States discretion to participate, or to not participate, in third-party suits against KBR. *See, e.g.*, *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (stating that dismissal is appropriate under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy"); *see also Amsinger v. United States*, 99 Fed. Cl. 254, 257 (2011) ("When the government has challenged the merits of a claim by means of a motion filed under RCFC 12(b)(1), this court may dismiss that portion of the complaint for failure to state a claim upon which relief can be granted, under RCFC 12(b)(6)." (citing *Stephanatos v. United States*, 81 Fed. Cl. 440, 442 (2008); *Cherbanaeff v. United States*, 77 Fed. Cl. 490, 492 (2007); *Esch v. United States*, 49 Fed. Cl. 631, 634 (2001))).

## CONCLUSION

For the foregoing reasons, the court lacks jurisdiction over the complaint and it is hereby **ORDERED** that

(1)     Defendant's Motion to Dismiss, filed March 18, 2013, is
        **GRANTED**;


(2)     The Clerk's Office is directed to **ENTER** final judgment in favor of
        defendant **DISMISSING** plaintiff's complaint for lack of subject
        matter jurisdiction, without prejudice; and


(3)     Each party shall bear its own costs.


                                        /s/ Lynn J. Bush_____
                                        LYNN J. BUSH
                                        Senior Judge